IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHANIE HAMILTON,

    *Plaintiff*,

v.

NORFOLK SOUTHERN
CORPORATION,

    *Defendant*.

Case No. 1:21-cv-740

Judge Jeffery P. Hopkins

# ORDER

    This is an FMLA (Family Medical Leave Act) retaliation case. Plaintiff Stephanie Hamilton ("Plaintiff" or "Hamilton") filed this action against her former employer Norfolk Southern Corporation ("Norfolk Southern" or "Norfolk"), alleging violations of the FMLA due to her termination for having exercised her protected rights. Doc. 1, PageID 6 (Count I).

    Currently before the Court are Norfolk Southern's Motion for Summary Judgment (Doc. 24), Plaintiff's Opposing Memorandum (Doc. 30), and Norfolk Southern's Reply (Doc. 35). In addition to these pleadings, Norfolk Southern filed Proposed Undisputed Facts ("PUF") (Doc. 24-2), and Plaintiff filed her Response to Norfolk Southern's PUF (Doc. 30-1). In her Response, Plaintiff admits, denies, or seeks to qualify certain facts presented in Norfolk Southern's PUF surrounding the events preceding her termination. *Id.* For the reasons below, Norfolk Southern's Motion for Summary Judgment (Doc. 24) is **DENIED**.

**I.    BACKGROUND**

    In compliance with this Court's Standing Order Governing Civil Cases, Norfolk Southern filed a document entitled "Proposed Undisputed Facts" ("PUF") (Doc. 24-2). *See*

Standing Order Governing Civil Cases (II)(F)(6)(b). Plaintiff filed a response to Norfolk's PUF (also as required by this Court's Standing Order Governing Civil Cases) (Doc. 30-1), so the Court draws the factual background for this opinion largely from those two pleadings, as well as from the Parties' supporting memoranda and testimony. *See* Docs. 1, 22, 24, 30, 35.

Norfolk Southern is a freight railroad company. *Compare* Doc. 24-2, PageID 404 ¶ 2 *with* Doc. 30-1, PageID 507 ¶ 2. Plaintiff began working at Norfolk Southern in March 2010, holding various positions until her termination in June 2021. Doc. 22-23, PageID 369. In May 2020, she relocated from Atlanta, Georgia, to Cincinnati, Ohio, to care for her father, who was suffering from dementia and heart issues. Doc. 22-1, PageID 129. Upon arriving in Cincinnati, Plaintiff started training as a "Terminal Supervisor," a role that involved overseeing safety discipline and monitoring ongoing performance for infractions of Norfolk Southern's operating rules. *Compare* Doc. 24-2, PageID 404 ¶¶ 7, 8 *with* Doc. 30-1, PageID 507 ¶¶ 7, 8.

In February 2021, Plaintiff applied for, and was granted, intermittent FMLA leave to care for her parents after her mother contracted COVID-19 and required a ventilator. Doc. 22-1, PageID 152. Initially, Plaintiff and her supervisors arranged for her schedule to align with her mother's medical appointments, allowing her to use vacation time rather than FMLA leave. *Id.* at PageID 154. This arrangement benefited both parties: Norfolk Southern had advance notice of her absences, and Plaintiff could use paid time off instead of unpaid FMLA leave; but the arrangement was short-lived. *Id.* The scheduling supervisors Plaintiff had coordinated with left the company, requiring her to work with new senior management at Norfolk Southern to accommodate her caregiving responsibilities. *Id.*

2

Around late April 2021, consistent with her previous arrangement, Plaintiff contacted the new schedule coordinator, explained her situation, and requested vacation time for late May 2021 to care for her mother. Doc. 22-1, PageID 152. The new coordinator did not respond and instead scheduled her to work on the requested days. *Id.* at PageID 154. When she saw her schedule, Plaintiff again approached the new supervisor, who informed her that she would need to find someone to cover her shifts if she wanted those days off. *Id.* at PageID 155. Unable to secure a replacement on short notice, she took unpaid FMLA leave for her mother's appointments. *Id.* at PageID 160. This was the only instance she used her FMLA leave. *Compare* Doc. 24-2, PageID 413 ¶ 59 *with* Doc. 30-1, PageID 515 ¶ 59.

About a week and a half after returning to work, Plaintiff notified the new supervisor that she might need to use FMLA leave again if scheduled on days when her mother had medical appointments. Doc. 22-1, PageID 160. She was terminated the following day. Doc. 23-1, PageID 373. Subsequently, Plaintiff filed this action, alleging violations of her FMLA rights.

## II. STANDARD OF REVIEW

Norfolk Southern now seeks summary judgment. "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the

3

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

In sum, after reviewing the cited evidence, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

### III. LAW AND ANALYSIS

Plaintiff argues that Norfolk Southern "interfered with her rights under the FMLA when it terminated her employment in retaliation for her using FMLA leave in May 2021." Doc. 30, PageID 486. Norfolk Southern counters this claim, asserting that her termination was not due to her use of intermittent FMLA leave but rather because she allegedly "failed to adequately perform her Principal Duties for six out of seven months [in her position as Terminal Supervisor]." Doc. 35, PageID 546. Norfolk Southern contends that Plaintiff's FMLA claim fails because (1) she cannot establish a *prima facie* case under either FMLA theory of recovery, and (2) she cannot demonstrate that Norfolk's reason for termination was

4

pretextual. Doc. 24-1, PageID 391–93. Consequently, the key issue before the Court is whether there is sufficient evidence to create a genuine dispute that Plaintiff was terminated for using FMLA leave. In making this determination, the Court must afford all reasonable inferences and view the evidence in the light most favorable to Plaintiff.

As a preliminary matter, Norfolk Southern challenges Plaintiff's classification of her FMLA claim as interference rather than retaliation. Doc. 24-1, PageID 391–92. Norfolk argues that Plaintiff cannot establish an FMLA interference claim because there is "no evidence that Plaintiff was denied benefits to which she was entitled." *Id.* at PageID 392. Plaintiff maintains, however, that her termination—though "retaliatory" in common parlance—constitutes interference under the FMLA because Norfolk "consider[ed] [Plaintiff's] use of leave as a negative factor in the decision to terminate her employment." Doc. 30, PageID 495–96.

The Sixth Circuit has clarified that although it "analyze[s] an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Therefore, the Court will first address the threshold issue of how to evaluate the Plaintiff's claim before proceeding to the merits.

**A. Plaintiff correctly categorized her claim as one of FMLA interference.**

Upon reviewing the record, the Court finds that the Parties' disagreement regarding categorization stems from Norfolk Southern's misapplication of the law.

The FMLA allows covered employees to take up to twelve weeks of leave per year for specific reasons, including, as relevant here, to "care for [their]…parent [who] has a serious

5

health condition." 29 U.S.C. § 2612(a)(1)(C). Under 29 U.S.C. § 2611(11), a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

There are two distinct theories of recovery under the FMLA: interference and retaliation. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). The "entitlement" or "interference" theory, relevant here, arises from 29 U.S.C § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Under § 2615(a)(1), an employer's interference with the FMLA-created right to leave or reinstatement following that leave constitutes a violation, regardless of the employer's intent. *Seeger*, 681 F.3d at 282 (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). By contrast, the "retaliation" or "discrimination" theory is rooted in § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

In determining the correct categorization of Plaintiff's claim, the Court finds guidance in the Sixth Circuit's analysis in *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860 (6th Cir. 2023). In *Milman*, the Court explained that "confusion" over the proper designation for certain FMLA actions often arises from § 2615(a)(2), which governs retaliation claims. 58 F.4th at 866. Norfolk Southern's argument—that Plaintiff's interference claim fails because she was not "denied benefits to which she was entitled"—encapsulates the confusion referenced in *Milman*. Doc. 24-1, PageID 392. Indeed, "[c]onstraining § 2615(a)(1) to wrongful denials of FMLA entitlements only and making § 2615(a)(2) the only avenue for recourse against

6

adverse employment action would ignore the plain text of § 2615(a)(1)." *Milman*, 58 F.4th at 867. The *Milman* Court noted that "we and other circuits have recognized [that] a retaliation claim may also be cognizable under § 2615(a)(1)." *Id.* at 866. (citing *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017)); *see also Wysong*, 503 F.3d at 446; *Smith v. City of Niles*, 505 F. App'x 482, 486 (6th Cir. 2012).

This Court is reminded that typically, "by the time a case is ready for summary judgment, 'the gravamen of the dispute [has been] brought frankly into the open for inspection by the court.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002)). Here, record evidence shows that the Parties' dispute revolves around two related acts regarding Plaintiff's FMLA leave: (1) Plaintiff's exercise of FMLA leave from May 26–28, 2021, to care for her mother, Doc. 22-1, PageID 155, and (2) Plaintiff's communication to Norfolk on June 10, 2021—the day before her termination—that she would need additional FMLA leave if scheduled to work on a day her mother had medical appointments. *Id.* at PageID 160.

As the *Milman* Court explained, "[t]ermination of an employee for exercising or attempting to exercise rights under the FMLA falls squarely within the plain language of § 2615(a)(1)." 58 F.4th at 867. This Court, therefore, finds that Plaintiff correctly categorized her claim under § 2615(a)(1) as interference based on Norfolk's retaliatory termination following her exercise—and potential future exercise—of approved FMLA leave.

Despite Norfolk Southern's misapplication of the law, this misstep is not unreasonable since Plaintiff's claim, though properly brought under § 2615(a)(1), must still be analyzed under the *McDonnell Douglas* burden-shifting framework used for retaliation claims under § 2615(a)(2). *Milman*, 58 F.4th at 867. That is, absent direct evidence of Norfolk's misconduct,

7

Plaintiff must establish: (1) engagement in a protected activity; (2) Norfolk's awareness of the activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and adverse action. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). Here, the Parties agree that Plaintiff satisfies the first three elements, with the fourth—whether her FMLA leave from May 26–28, 2021, caused her termination on June 11, 2021—being disputed. Doc. 24-1, PageID 393.

However, because Plaintiff *has* offered direct evidence of Norfolk's improper motive regarding her termination, the burden of production and persuasion shifts to Norfolk to prove it would have terminated Plaintiff absent the impermissible motive. In other words, Plaintiff does not need to show the fourth element under *McDonnell Douglas* because her offer of direct evidence shifts the burden of production and persuasion to Norfolk to prove it would have terminated Plaintiff absent any impropriety.

### B. Plaintiff has offered evidence sufficient to create a genuine dispute of material fact.

The Sixth Circuit has held that "[a]bsent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Here, the Court notes that the Parties proceeded directly to the *McDonnell Douglas* framework. *See* Doc. 24-1, PageID 393; Doc. 30, PageID 496–97. However, from this Court's view, Plaintiff has presented direct evidence of Norfolk's unlawful conduct, making a *McDonnell Douglas* burden-shifting analysis inappropriate. *See Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 708 (6th Cir. 2008) (finding that the district court erred by evaluating the plaintiff's FMLA retaliation claim under *McDonnell Douglas* where there "exist[ed] direct evidence of the discrimination.")

The Sixth Circuit informs us that "[d]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated, **at least in part**, by unlawful discrimination." *Igwe v. Salvation Army*, 790 F. App'x 28, 34 (6th Cir. 2019) (emphasis added). In this context, Plaintiff points the Court to an internal communication from Norfolk Southern regarding her termination. Upon learning of the recommendation to terminate Plaintiff, a member of Norfolk Southern's Human Resources group responded to the "decisionmaker" responsible for Plaintiff's termination, asking, "[Plaintiff] has been in the role since May 2020. She was rated Consistently Effective [in her 2020 performance review] . . .[w]hat's changed?" The decisionmaker replied, among other things, that "**[Plaintiff] has asked for more flexibility in her work to take care of family obligations**[,] which the business has been able to accommodate." Doc. 22-18, PageID 352 (emphasis added).

The Court finds this communication to be direct evidence because it serves as "proof that . . . compels the conclusion that unlawful discrimination was **at least a motivating factor in the employer's actions**." *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) (emphasis added) (internal quotations and citations omitted). If Plaintiff's termination stemmed from her job performance, then requests to utilize her approved FMLA leave to attend to family obligations should be irrelevant. The Sixth Circuit has stated that "[w]here a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action, 'the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)); *see also Christopher v.*

9

*Stouder Mem'l Hosp.*, 936 F.2d 870, 873–74 (6th Cir. 1991) (affirming the district court's determination that direct evidence of discriminatory retaliation under Title VII existed where the plaintiff nurse produced evidence of conversations in which managers at the defendant hospital stated that her prior sex-discrimination suit was a factor in the denial of limited privileges to work at the hospital).

Given that Plaintiff has produced direct evidence of improper motive, the burden shifts to Norfolk Southern to prove by a preponderance of the evidence that it would have made the same decision to terminate Plaintiff absent the impermissible motivation. *Daugherty*, 544 F.3d at 708. Upon reviewing the evidence, this Court concludes that whether Norfolk Southern has met this burden is, under the circumstances, a question for a jury to decide. In other words, Norfolk Southern has not provided evidence demonstrating that it was more likely than not that Plaintiff's job performance, rather than her FMLA leave, caused her termination.

> **i. Norfolk Southern has not met its burden to prove that Plaintiff's job performance was more likely than not the reason for her termination.**

It is not lost on the Court that navigating the labyrinths of burden-shifting and persuasion can sometimes be challenging. To recap, on summary judgment, the *Court's* ultimate obligation when reviewing the evidence before it is to determine whether there exists a "genuine dispute of material fact" (*i.e.*, allegations that are supported by evidence that could matter to the outcome). *Anderson*, 477 U.S. at 247–48. Here, Plaintiff's claim is for FMLA retaliation. When evaluating FMLA retaliation claims the key inquiry is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citation and internal quotation marks omitted). "The employer's motive is relevant because [FMLA] retaliation claims impose liability on employers that act against employees

specifically **because** those employees invoked their FMLA rights." *Id.* (emphasis added). Thus, the ultimate issue before the Court is whether there is sufficient evidence to create a genuine dispute that Plaintiff was terminated for using FMLA leave.

In making that determination, the plaintiff bears the initial burden of presenting direct evidence of unlaw conduct **OR** proceeding under the *McDonnell Douglas* burden-shifting framework with circumstantial evidence—evidence that can create a reasonable inference that the plaintiff was retaliated against. As it relates to plaintiffs relying on circumstantial evidence, it is important to note that although the burdens of production shift under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If, however, like here, a plaintiff presents direct evidence— "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions"—a plaintiff need not proceed under the *McDonnell Douglas* analysis because the plaintiff's direct evidence **shifts the burden of production and persuasion** to the defendant to prove it would have terminated the plaintiff absent any impropriety. *Daugherty*, 544 F.3d at 708 (emphasis added).

Where, as here, there exists direct evidence of improper motive, the defendant must prove by a preponderance of the evidence that it would have terminated plaintiff even if it had not been impermissibly motivated. For the sake of clarity, "'preponderance of the evidence' is evidence that is of greater weight, on balance, than that offered in opposition to it." *Benge v. Johnson*, 474 F.3d 236, 248 (6th Cir. 2007). For our purposes, this means that because Plaintiff has produced direct evidence of Norfolk Southern's improper motive in terminating

her, Norfolk Southern must provide evidence showing that it was more likely than not that it would have terminated Plaintiff even if she had not taken—and communicated the possible need to take—her approved FMLA leave. Doc. 24-1, PageID 394. Norfolk Southern has failed to meet this burden.

As discussed, the Parties' arguments centered exclusively on the circumstantial evidence offered by Plaintiff, indicating that Norfolk Southern did not approach the situation as if it had the ultimate burden of persuasion. Therefore, the evidence before this Court consists of Plaintiff's attempts to demonstrate that Norfolk's reason for termination was pretextual under *McDonnell Douglas*. *See* Doc. 30, PageID 500–05. Having said that, the evidence Plaintiff provided hampers Norfolk Southern's ability to satisfy its burden under the preponderance of evidence standard. Norfolk Southern would have this Court believe that it was Plaintiff's job performance, rather than her use of FMLA leave, that led to her termination. Doc. 24-1, PageID 394–95. However, the evidence presented leaves this Court unconvinced of Norfolk's assertion. Indeed, the timing of Plaintiff's termination alone compels the Court to conclude that her claim must be submitted to a jury.

Plaintiff testified that although she was approved for intermittent FMLA leave, she often coordinated with the scheduling supervisor, Justin Rudd ("Mr. Rudd"), to plan her time off in advance. According to Plaintiff, when she was aware of any appointments or significant events concerning her mother, she provided Mr. Rudd with advance notice so that Norfolk Southern could adequately plan for staffing. Doc. 22-1, PageID 154. After Mr. Rudd left the company, Plaintiff had to communicate with different senior management at Norfolk Southern to accommodate her scheduling needs for her sick parents.

Consistent with her prior arrangements, on May 8, 2021, Plaintiff sent an email to Norfolk's senior director, Derek Green ("Mr. Green"), formally requesting vacation for May 26–28, 2021, to care for her mother. Doc. 22-14, PageID 333. Mr. Green did not respond, prompting Plaintiff to follow up with him on May 21, 2021, to reiterate her request. Doc. 22-15, PageID 343. Mr. Green informed Plaintiff that Justin Sharp ("Mr. Sharp"), a senior terminal manager, would issue a new schedule the next day. *Id.* When Plaintiff contacted Mr. Sharp, she explained her request and mentioned her available FMLA leave, indicating she generally preferred to request vacation leave to avoid burdening other managers with unplanned absences. Doc. 22-17, PageID 349.

However, like Mr. Green, Mr. Sharp did not initially respond to Plaintiff and instead issued a schedule requiring her to work on May 26–28, 2021, which were the days she had requested for "vacation." Doc. 22-1, PageID 159. When Plaintiff confronted Mr. Sharp about the schedule, he informed her that she would need to find someone to cover her shifts if she wanted the time off. *Id.* Unable to secure a replacement in the limited time available before her requested days off, Plaintiff notified her supervisors that she would be using her approved FMLA leave to care for her mother on May 26–28, 2021. *Id.* This was the first and only time Plaintiff used her approved FMLA leave. *Compare* Doc. 24-2, PageID 413 ¶ 59 *with* Doc. 30-1, PageID 515 ¶ 59, Doc. 30, PageID 498.

Upon returning to work on May 31, 2021, Plaintiff testified that she faced "backlash" for her FMLA leave the previous week. Specifically, she stated that she was assigned a more demanding work schedule than ever before, which required her to work "[15] days in a row, for [12] hours at a time, without a day off in between." Doc. 30, PageID 498; Doc. 22-1, PageID 156. On June 10, 2021, approximately a week and a half after returning from her first

13

use of FMLA leave, Plaintiff again informed Mr. Sharp that her mother had an upcoming medical appointment and that she would need to use additional FMLA time if he did not construct the schedule accordingly. *Id.* at PageID 160. Mr. Sharp terminated Plaintiff the next day, June 11, 2021. Doc. 23-1, PageID 373.

In addition to the sequence of events just discussed, Plaintiff provides evidence showing that Norfolk Southern retained an employee who engaged in conduct similar to that which Norfolk Southern claims justified Plaintiff's discharge. Norfolk Southern contends that Plaintiff was terminated due to her "repetitive failure to perform Principal Duties of her Terminal Supervisor position." Doc. 24-1, PageID 394. In support of her position, Plaintiff offers the declaration of her former coworker, Thomas Kyle ("Mr. Kyle"), who, like Plaintiff, served as a Terminal Supervisor at Norfolk Southern. Doc. 32-1, PageID 525–27. As part of their "Principal Duties," both Plaintiff and Mr. Kyle were responsible for completing "20 RP-1 efficiency checks per month." *Id.* at PageID 525.

Mr. Kyle asserts that Norfolk Southern issued him a warning letter, referred to as "counseling," in April 2021 for failing to complete the required efficiency checks in February and March of that year. *Id.* at PageID 526. He further asserts that on June 10, 2021—the same day Plaintiff communicated that she would need to use additional FMLA time if scheduled on days when her mother had appointments—he received a second "counseling" warning letter for failing to complete the required checks in February, March, [April], and May of 2021. *Id.* In contrast, Norfolk Southern claims that Plaintiff was issued only one warning letter, which Plaintiff disputes. *Compare* Doc. 24-1, PageID 400 *with* Doc. 30, PageID 502. Plaintiff explicitly testified that she never saw the warning letter purportedly issued to her. Doc. 22-1, PageID 148.

14

Norfolk Southern attempts to support its assertion that Plaintiff was "counseled" by referencing Mr. Green's testimony; however, Mr. Green's testimony left the Court with uncertainty, not assurance, regarding whether Plaintiff received the warning letter. Doc. 24-1, PageID 400. The lone "counseling" letter that Plaintiff was allegedly issued was written by Mr. Rudd, the scheduling supervisor with whom she had previously coordinated her parents' medical appointments before his departure from Norfolk. Doc. 22-9, PageID 321. Norfolk did not present any testimony from Mr. Rudd to confirm his alleged issuance of the letter to Plaintiff. And for his part, Mr. Green testified that he was unsure how counseling letters were "developed or presented to the employee," and noted that he "think[s] each individual [supervisor] handled it differently," but he was "not certain how Mr. Rudd would have handled this [counseling letter to Plaintiff]." Doc. 22-3, PageID 190–91.

While Mr. Green claimed to have spoken with Plaintiff about her failure to complete the required efficiency checks, he stated that he "couldn't give [the Court] specifics" about when those conversations took place. *Id.* at PageID 191. And although he allegedly took notes documenting his conversations with Plaintiff, he "couldn't tell [the Court]" where those notes are and did not know if he "sent [Plaintiff] anything specific to [their] conversation." *Id.* at PageID 192.

Setting aside the ambiguity surrounding whether Plaintiff was actually "counseled," Norfolk Southern argues that Mr. Kyle's "progressive improvement" in performance eliminates him as a comparator to Plaintiff, given that he completed two checks in February, three checks in March, and 16 checks in April. Doc. 35, PageID 551. From this Court's perspective, both Plaintiff and Mr. Kyle fell short of the "required" 20 efficiency checks,

15

particularly in February and March. Despite this, Mr. Kyle received multiple "counselings" and retained his job, while Plaintiff was allegedly only "counseled" once and then terminated.

In its attempt to justify its actions, Norfolk Southern points to the same communication that contains what this Court considers direct evidence of improper motive. *See* Doc. 22-18, PageID 352. Norfolk asserts that "Plaintiff mischaracterizes a written statement. . .in an effort to fabricate discriminatory animus." Doc. 35, PageID 549. According to Norfolk, "[t]he June 10, 2021, email from Human Resources Business Partner Felisha McCullum is a business record that memorializes a detailed summary of the basis for the termination of Plaintiff's employment." *Id.* However, this business record raises more questions than it answers for the Court. The same Norfolk manager who noted that "[Plaintiff] has asked for more flexibility in her work to take care of family obligations" was asked "[h]ow does [Plaintiff] compare to the other Terminal Supervisors?" Doc. 22-18, PageID 352. The manager responded that "[m]issing the minimum requirement for the [efficiency checks] is not unheard of across the network. . . [w]e understand that sometimes employees will not meet the requirement, **but back-to-back offenses is unacceptable**. We expect the officers to turn it around after they've received their first letter, and they typically do." *Id.* (emphasis added). This suggests that Mr. Kyle's two warnings and three consecutive months of failing to meet requirements were more acceptably "unacceptable" than Plaintiff's similar failures over the same timeframe. Perhaps, like Mr. Kyle, Plaintiff should have refrained from taking FMLA leave. Doc. 32-1, PageID 527.

Finally, regarding Norfolk Southern's failure to demonstrate by a preponderance of the evidence that Plaintiff's job performance, rather than her FMLA leave, caused her termination, the Court finds Plaintiff's yearly performance review, bonus, and salary increase

16

to be persuasive. Norfolk Southern claims that Plaintiff failed to meet her efficiency check requirements in November and December of 2020, as well as in January, February, and April of 2021. Doc. 35, PageID 553. Norfolk asserts that "Plaintiff's failures [were] unacceptable violations of safety protocols[,] which jeopardized the safety of individuals working within the Terminal and the community at large." *Id.* However, Plaintiff's "overall performance rating" for 2020, which included November and December, was rated as "consistently effective." *See* Doc. 29-1, PageID 479. Norfolk Southern defined "consistently effective" as "[p]erformance [that] consistently met the requirements of the job and required minimal to no improvement to meet performance expectations." *Id.* at PageID 477. Notably, Plaintiff's 2020 performance review does not mention any failure to meet efficiency check requirements. *Id.* In addition to her "consistently effective" performance review for 2020, Plaintiff received a bonus of approximately $4,400 in February 2021. Doc. 29-2, PageID 481. Moreover, in March 2021—despite allegedly failing to complete any efficiency checks for months—Plaintiff received a salary increase, which included a merit award of $2,050 reflecting her "continuing contributions." Doc. 29-4, PageID 485.

The Sixth Circuit has established that "[i]t is considered interference for purposes of the [FMLA] for employers to use the taking of FMLA leave as a negative factor in employment actions." *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475–76 (6th Cir. 2019) (citing 29 C.F.R. § 825.220(c)); *see also Wysong*, 503 F.3d at 447 ("[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled.")

At this juncture, the Court reminds the Parties that what must be resolved at this summary judgment stage is simply whether Plaintiff has "produce[d] sufficient evidence from

which a jury could reasonably reject [Norfolk Southern's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Given the circumstances, this Court cannot reconcile (or more accurately, it finds a genuine dispute of material fact regarding) Plaintiff's sudden termination following her first and only use of—and communication regarding additional—FMLA leave; the retention of Mr. Kyle and the termination of Plaintiff; and the performance review, bonus, and salary increase awarded to Plaintiff despite her alleged "repetitive failure to perform Principal Duties of her Terminal Supervisor position." Doc. 24-1, PageID 394. Therefore, after reviewing the cited evidence, the Court concludes that there exists a "sufficient disagreement" that necessitates submitting this matter to a jury. *Moore*, 8 F.3d at 340. Accordingly, this Court **DENIES** Norfolk Southern's Motion for Summary Judgment.[1] Doc. 24-1.

---

[1] For the avoidance of doubt, the evidence before the Court is sufficient for Plaintiff to survive summary judgment even under *McDonnell Douglas's* burden-shifting framework. That is, assuming the communication this Court relies on is deemed not to be direct evidence by the Sixth Circuit, it is still sufficient for Plaintiff to satisfy her initial burden. Again, "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs*, 974 F.3d 652, 661 (6th Cir. 2020). Norfolk's main argument against Plaintiff's ability to establish her *prima facie* case is that "temporal proximity alone is insufficient to establish a causal connection." Doc. 24-1, PageID 393. But Norfolk Southern openly disregards case law from our jurisdiction that contradicts its assertion. Indeed, in certain instances, the Sixth Circuit has expressly "concluded that temporal proximity alone is sufficient to establish a *prima facie* case of FMLA retaliation." *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 452 (6th Cir. 2017) (citing *Krumheuer v. GAB Robins N.A., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012)); *see also Kovacevic v. Am. Int'l Foods,* No. 22-1675, 2023 WL 3756063, at *5 (6th Cir. June 1, 2023) ("**True, temporal proximity alone may provide evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.**") (citations omitted) (emphasis added); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (holding that the constructive discharge of Montell, the plaintiff in that case, one day after her complaint of sexual harassment was enough to establish causation); *Herrera v. Churchill McGee, LLC,* 545 Fed.Appx. 499, 501 (6th Cir. 2013) (holding that plaintiff's termination one month after he complained of racial discrimination to his employer was enough to establish causation). Moreover, cases that state temporal proximity alone is not enough to establish causation also note that combining temporal proximity with other evidence of retaliatory conduct is enough to establish a causal connection. *See, e.g., Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (noting that "[t]here are, however, circumstances where temporal proximity, considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection.") (internal quotation marks and citations omitted.) As it relates to demonstrating pretext, the evidence discussed in Section IV.B.ii would also be sufficient because Plaintiff's burden to show pretext requires her "**only to rebut, but not to disprove, the defendant's proffered rationale**." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (emphasis added). The Sixth Circuit has said

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** the Motion for Summary Judgment of Norfolk Southern (Doc. 24-1).

**IT IS SO ORDERED.**

November 19, 2024

Jeffery P. Hopkins
United States District Judge

---

that "[t]he three–part test need not be applied rigidly. **Rather, pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?**" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (emphasis added) (internal quotation marks, citation, and alterations omitted). Norfolk also cannot hide behind the honest belief doctrine considering the inconsistencies among Norfolk senior management regarding Plaintiff's termination. Doc. 30, PageID 504–05. Indeed, "[a]lthough we will not 'micro-manage the process used by employers in making their employment decisions,' **we also will not 'blindly assume that an employer's description of its reasons is honest**.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (emphasis added). Were the above not enough, perhaps this will penetrate: "[t]he more idiosyncratic or questionable the employer's reason, the easier it will be to expose as a pretext, if indeed it is one." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 651 (6th Cir.2012) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)).